OBA, OBA, OBA, all persons having business before the Honorable United States Court of Appeals to the 51st Columbia Circuit are admonished to draw near and give their treatment so the court is now safe. God save the United States and its Honorable Court. Be seated, please. Case number 16-5347, Matthew Richard Palmieri, Appellate v. United States of America et al. Mr. Giles for the amicus curiae and Mr. Scarborough for the appellees. Good morning. Good morning. Thank you, Your Honors. My name is Thomas Birch and I supervise the Appellate Clinic at the University of Georgia, which was appointed by this court as amicus on behalf of Mr. Matthew Palmieri. Today, one of our third-year students, Mr. Ryan Giles, will present an argument on our behalf and I'll be sitting at counsel's table. Thank you very much. Good morning, Mr. Giles. Good morning, Your Honor. And may it please the Court, my name is Ryan Giles, here as amicus for Mr. Palmieri. This case is not about whether the decision to revoke Mr. Palmieri's security clearance was correct. This case is about the fact that Mr. Palmieri did not receive the fair hearing the law requires. And furthermore, he raises other legitimate challenges to the way the investigation was conducted before this hearing took place. Now, the district court made four errors. And turning to the first one, the right of cross-examination, the crux of our argument is this, that Mr. Palmieri, under the Due Process Clause or under the Administrative Procedure Act, has a right to insist that the agency follow its own regulations. So the government leveled dozens of allegations against Mr. Palmieri in support of the revocation of the security clearance. Sorry, a right based on what source of law? I'm sorry, Your Honor? A right based on what source of law? The DOD regulations or the Due Process Clause of its own force? Well, under both the Due Process Clause as well as the Administrative Procedure Act, Your Honor, Mr. Palmieri has a right to insist that, pursuant to Executive Order 10865 as well as the DOD directive, that the agency follow those directives. Now, Executive Order 10865... Let's just start with the due process piece, and then I understand there's a separate inquiry under the regs, but the Supreme Court has said very clearly there's no right to a security clearance. And if there's no right to a security clearance, then there's no basis to constitutionalize the processes by which clearances are adjudicated. Yes, Your Honor, but to that vein, there's also not a right to a driver's license, but there's a right to a fair revocation procedure. There may be a statutory right to a driver's license that creates a new property interest. There's no such right to a security clearance. Yes, Your Honor, and to that point, we point to two cases. So in the Green v. McElroy case, which this court considered factually analogous circumstances, where it was a security clearance revocation case, where the applicant was not given the right to cross-examine and was forced to essentially respond to the allegations contained in the report, much like Mr. Palmieri was here. Now, while the court did not reach the due process issue in that case, they did hold that the right to hold specific private employment without undue interference from the government, that does fall within the property and liberty understanding of the Fifth Amendment. And when that is coupled with this court's decision in the Cartesia case… What's the liberty interest at issue when a citizen is not incarcerated, can go about his business, the only thing he is denied is a presumptively disfavored access to highly sensitive information that is granted only to a very narrow band of people who need to know? Yes, Your Honor, and specifically to the liberty interest, the case that's on point here is the Cartesia case decided by this court in the 90s. Now, that case, the court outlined a two-pronged framework to analyze… Did that involve security clearance? It did not specifically involve security clearance, Your Honor, but it did involve counterintelligence concerns of a Russian translator that contracted, like Mr. Palmieri, for the government. But furthermore, in footnote 16 of that opinion, the court actually addresses that while it was not a security clearance revocation, had it been a security clearance revocation, she would have been entitled to rely upon the extensive procedural protections. And in footnote 16, there are several enumerated of those protections, one of which is the right of cross-examination. So in the Cartesia opinion, the court outlined that had it been a security clearance revocation, she would have been able to rely upon those protections articulated in the regulation. And at that time, Executive Order 10865, as well as the implementing directive, was in place. It just seems like that's cutting into the executive's control over security clearance decisions, which the Supreme Court protected in Egan, to a very high degree if you're applying that theory to adjudicatory processes. This is not the Fourth Amendment hypothetical where the police break down your door if you have a clearance, right? It's just how you adjudicate whether or not you get the clearance. And the security experts make a judgment that they want to see hearsay evidence or they don't. And that's bound up in their expertise about how they make these judgments. And Egan seems to protect that. No, Your Honor, and the reason why is because Egan goes to the question of merits. So in the Egan case, that had to do with essentially the plaintiff in that case was arguing that the administrative agency, the executive, put too much weight. Right, but let's just focus on the hearsay claim. I know you have others, but that is nothing more than the process for adjudicating the merits. And process is nothing more than weighing risks of getting things wrong one way or the other, right? That's true, Your Honor, but it's axiomatic that due process requires that the government follow the law. And that's what Mr. Palmieri is alleging here. I mean, that may be coming back to the DOD regs point, but part of the governing law is that the executive branch gets to make these decisions. They do as to the merits, Your Honor, and as to information and evidence that is properly before the administrative agency, Mr. Palmieri admits that he has no right to contest that. But here, where the procedures were violated, where the law was violated to get that evidence in, that is the type of – Suppose a litigant says, I think as a matter of procedural due process that in order to be denied a clearance, the executive has to find me untrustworthy by clear and convincing evidence. That's a process question. Do you get to litigate that question under EGAN? There certainly are cases, Your Honor, where a merits question could be styled as a process question. And the hearsay claim strikes me as that kind of thing. You have reliability concerns about hearsay, but the executive says this kind of decision, we have zero tolerance for risk, and we really need to see everything we can possibly see. That seems to me just intimately bound up in the security judgments that they get to make. Yes, Your Honor. But in the Webster case, in footnote 7, the court explains that where a constitutional claim properly presented – well, the Webster opinion generally says that where a constitutional claim properly presented, that it would be a serious question if it was unreviewable. And then in footnote 7, specifically in that case, the petitioners concede that – And EGAN says there would be a serious question if it were reviewable, because EGAN, while both those cases are statutory, EGAN rests on Article 2 concerns much more explicitly than Webster rests on Article 3 concerns. That's true, Your Honor. And I think one of the important points there is the rationale of EGAN. And the rationale of EGAN is exactly to not second-guess the expert determinations of Article 2 adjudicators or of the executive. Now, that's true. But here, when we're talking about a question that really has to do with a statutory construction of the regulations and saying, did they follow the regulations? Yeah, I know. I understand that. I'm just trying to tie down the sort of freestanding due process point, which seems to me causes some EGAN problems for you. I mean, if you want to argue this just under the DOD regs, that's fine. But I worry about the broader theory. Well, but then pointing back to the Cartsevich case, Your Honor, you know, that post EGAN had to do with counterintelligence concerns, which, you know, that's certainly within the purview of the executive. And that would have to do with the merits question. But in that case, the court said that a liberty interest is implicated where it broadly precludes someone from their chosen profession or automatically excludes them. Yeah, that cuts in your favor but wasn't a clearance case. And there are other cases that cut against you on that, like Dorfman. That's true, Your Honor. But respectfully, the Dorfman case is from the Ninth Circuit. And the Cartsevich case, again, in the footnote, did point out that while not a security clearance, this was, you know, they called it a national security check, I believe, in the opinion. Now, a national security check is true. It's not a security clearance. But she still had to submit her fingerprints. She had to go through a background check. It's tantamount to a security clearance. And the court still reached it on liberty interest grounds and articulated the two-pronged framework under which to find a liberty interest. And the district court never addressed the Cartsevich opinion, never addressed that. And so while the allegations of stigma that the government brings up, well, this might be relevant. In the Cartsevich case, there was no requirement to show stigma where one is automatically excluded from a broad range of employment. And that's what Mr. Palmieri has alleged verbatim in his complaint. And he's alleged stigma throughout his complaint and throughout the hearing. And so as it relates to the regulation, though, Your Honor, which, again, under the Administrative Procedure Act, which the district court did reach and which the government doesn't seem to contest, that applies here. I agree with you. There's support in Egan for the proposition that you can address whether they – if they choose to impose on themselves rules for adjudicating clearances, you can hold them to it. I see my hat's on myself. I'll take that. Okay. We'll give you that couple minutes. Sorry. May it please the Court. Charles Scarborough for the Government Defendants. As Judge Bates recognized, there's sort of three main categories of claims in this case. One is challenges to the suspension of Mr. Palmieri's security clearance. I don't think there's any dispute that those direct sort of challenges are barred under Egan. The second category is the one the Court has been focusing on the most, and I think I would like to focus on as well, is challenges to the administrative proceedings in which the suspension was affirmed. And what do you do with Greenberg on that category? Well, so what we're urging, just to be clear, is a functional approach to Egan, which the Court has taken with respect to statutory claims, and we think it should take the same approach with respect to claims that can be styled as due process or constitutional claims. And that's basically look to what the claim asks the Court to consider. And if it is asking the Court to essentially second-guess predictive judgments committed to the executive branch about who, you know, may have access to classified information, then that is something that is barred by Egan. We think that is the, you know, that's the approach that the Court took, for instance, in the Ryan case, when it said, look, under Title VII, you would... have looked at the process and found it sufficient here? You certainly could do that, Your Honor. Would that be the narrowest approach, in your view? So that's the approach the Court took in the Gill case. I mean, there were a lot of Egan arguments made in the Gill case. You know, that was last fall. The Court decided it on purely non-Egan grounds, said there was no due process violation, sort of affirmed the dismissal. We would be happy to have that in this case. What I would like to suggest is that this procedural end run around Egan is becoming an increasing problem. It is basically a way in which you can make a thinly veiled attack on the merits, to use the language from Dorfman, in pretty much any case. Whenever the government, you know, suspends a security clearance and then gives you the processes under EO 10-865 and under the, you know, the DOD directives, you can always drum up some sort of claim of procedural error that essentially goes to the merits. And as we know from this Court's decision in Zavalas, whenever you're making a due process claim, you have to have harmful error. So in the end of the day, you have to be making an inquiry into whether the error was harmful. In other words, whether the exclusion of that evidence, the admission of that evidence, would have changed the outcome. And that's precisely the sort of inquiry that Egan forecloses. But you've laid out all of these rules. I mean, I think under Egan you should have a lot of discretion to fix the rules, but you've laid them out. I mean, the EO has a framework for doing that. Right. The DOD directive implements it. And maybe I missed it, but I was surprised not to find in that EO the boilerplate final paragraph, which says nothing in here creates judicially enforceable rights. Right. So what's the basis for saying they can't just bring a run-of-the-mill APA claim to hold you to your own expert judgments about what kind of process is or isn't appropriate? Because at the end of the day, that type of claim, I think it would be useful to look at the claim in this case. It's that basically he was denied an opportunity. Evidence was admitted, this Carpenter letter was admitted, that showed serious concerns about the fact that he had told a Navy reservist not to report contacts with Syrian nationals. He asked someone to do that. So there's a serious security concern lying at the heart of this case. And that evidence comes in. And Mr. Palmieri says, he says in his hearing actually a variety of things. He's all over the map. He says, I don't recall saying that. And then he sort of denies saying that. And then he says, if I did say it, it doesn't matter. So he doesn't really deny it. And it's clear that there has been some contact with Syrian nationals. There's lots of evidence, in other words, in the hearing before the administrative judge. No, I understand. But his process claim is that hearsay evidence was improperly admitted under your own regs. Right. And it either is or isn't a business record, if I'm remembering the details correctly. And you have undertaken to specify when you think that kind of document should or shouldn't come in, even in this very sensitive context. That's correct. But what I'm trying to get to is that whether there's a due process violation or an APA violation, ultimately you have to determine whether it would have affected the outcome. And at the end of the day, what the administrative judge said was, I find this person not credible, not trustworthy, and therefore I can't determine that keeping his access to classified information is clearly consistent with the national security. That's the merits decision. That is the merits decision. That's Cora Egan, but his claim is just he shouldn't have admitted this document. But a corollary to that claim, Your Honor, what I'm trying to suggest under the due process, is that it affected the outcome. That's the only reason why you are fighting about this admission of the evidence. I mean, it's quite clear that he says, absent this evidence, you wouldn't have been able to have sufficient security concerns. I mean, that's the whole reason why you bring the due process claim, is to sort of, at the end of the day, get some relief that goes to the merits. That's why I started out with suggesting that this is, as you suggested in your colloquy with counsel, that this is really just a thinly veiled attack on the merits. This is a procedural claim, sort of, or masquerading as a procedural claim, when it's really a challenge to the sufficiency of the evidence. And so, again, you could decide this, as you did in Gill, that there is no merit to the due process claim. There's a number of merits-based reasons, including waiver, because he had every opportunity to the administrative judge gave him every opportunity to bring in the reservist to have the cross-examination. But what I'm suggesting is that this is becoming an increasing problem. We're seeing more and more of these sorts of cases where a plaintiff says, I'm not challenging, I'm not challenging the merits of a security clearance decision, but I am challenging the procedures here. And the district courts are not a forum for sort of run-of-the-mill evidentiary type of analysis. How do you make the distinction between claims that really are directed at process, over which we're supposed to have some responsibility, and those that are in runs? How do we make that distinction? Well, so, again, that's why we're urging a functional approach to EGAN. I think you look at what the claim asks the court to do. And in Greenberg, for instance, you asked about Greenberg, and I don't think I responded, but I'll try to circle back to that. Greenberg, it was just a question of the constitutionality of the questions being asked on that security questionnaire, in particular the one about prior drug use. Yeah, that sounds to me like it's very intimately bound up in the ultimate security judgments. I would have thought that the core executive authority to make security judgments includes the ability to say, we really need to know about drug use. Well, that's what the government argued in Greenberg. And laws. That's my point, is the government laws. So we're stuck with Greenberg. We're stuck not just with Greenberg's general holding that if the claim goes to, at a minimum, if the claim goes to process and is constitutional, it's probably outside of EGAN. But we're stuck with applying that principle to a particular kind of procedural claim that seems to me very closely bound up in the merits-related expert judgments. Well, so I guess the primary distinction I would draw about Greenberg, which we tried to draw in our brief, is that it was a challenge just to the constitutionality of that question sort of in the abstract. It was not, as is trying to occur here, a due process challenge to the way that the agency, the expert administrative agency applied its own rules as to this guy and made evidentiary findings as to this particular person. And that's a really, really important distinction in terms of the individualized predictive judgments that EGAN is supposed to shield. It's one thing for a court to say up or down basically on whether, you know, a question about drug use violates the Fifth Amendment. Ultimately, the court said in Greenberg it didn't. And another thing entirely for a court to examine, you know, the administrative judge's application of its own evidentiary rules and make a determination that there was, you know, prejudicial error in the admission of this evidence because there was a denial of cross-examination and that it would have made a difference as to this guy. I would have thought that what we allowed in Greenberg is more intrusive because what you just mentioned is courts holding the government to its own standards, whereas Greenberg is you want to make particular inquiry. You think drug use is highly relevant and important, and that seems like a pretty good security-based judgment, and we say there's judicial review of that. Well, again, I think it's the question, the reason why Greenberg is different is because it's not about evaluating the individualized. Okay, so let's say there were no rule-based criterion announced in advance and an applicant is up for renewal of a security clearance and the security officer in an individual adjudication says, I want to know about drug use, about any drug use by you because I think it's relevant. Would the applicant be able to challenge the constitutionality of that? Same question, it's just asking the context of an individual. It's hard to answer in the abstract because, of course, that type of question and really a whole broad swath of personal conduct-type questions have been approved on the merits. Greenberg is one such case saying you can ask a lot of those sorts of questions on the merits. I think that would be something if an individual administrative judge, like the judge in this case, thought that that was relevant and asked those questions, and it's difficult to imagine a plaintiff being able to come in after the fact and say, I know you couldn't ask that question because that really does sort of go to the predictive judgment of the executive branch about what is relevant and what makes you, a specific person, a risk to the national security. So I do think that's the type of thing that would be barred by EGAN. Unless the Court has any further questions, we're happy to rest on the papers. Thank you very much. And ask that Judge Bates' decision be affirmed. Thank you. Mr. Giles, we'll give you two minutes. Thank you, Your Honor. So the first thing to address is the waiver argument, and the timeline here is important as to why Mr. Palmieri did not waive his right to cross-examination. Under paragraph 14 of the directive, the burden is on the government to assert evidence or to promulgate evidence in support of every one of the statement of reasons. And at the time that Mr. Palmieri was given what the government is calling an opportunity to cross-examine a witness, he was essentially told that if you want to preserve your right to cross-examination, you have to go bring the witness. And the reason that's important is because at the time he was given that choice, he did not know if there had been any admissible evidence against him. And he specifically asked the administrative judge, are you going to rule on the admissibility of this letter before I have to make this decision? And the judge said no. And so because of that, he's put between a rock and a hard place. Without knowing whether or not there's any admissible evidence against him, he's being told that he has to bring an adverse witness against him to preserve his right to cross-examination. That puts him between a rock and a hard place, and that violates paragraph 14 of the directive. And then to the government's other point, which the government brings up about how essentially vindicating the process would go to the merits, our response to that is why the government's harmless error argument fails. And it's because had the procedure been followed, this case sets it up cleanly, because had the procedure been followed, there would be no admissible evidence against Mr. Palmieri. And the government points out that Mr. Palmieri never denied it. But that misses the point for two reasons. First is on page 415 of the record, he says he doesn't recall saying this to the reservist. But even more importantly, the appeal board itself has ruled that where the government has produced no evidence, just because the administrative judge finds the testimony of the applicant unpersuasive or doesn't believe him is not sufficient to find against him. And the citation to that is ISCR 96-0461. Now, the appeal board itself has considered that and said that that's not true. And because this wasn't a business record, and because this, even if it was, it doesn't eliminate the right to cross-examination that's clearly in the regulation and uses the word only, which has but one meaning, we ask this court to defer a slow report. Thank you very much. Mr. Giles, you were appointed by the court to appear here as an amicus, and we thank you very much for your assistance. The case is submitted.
judges: Henderson, Griffith, Katsas